NEWMAN, Circuit Judge,
dissenting.
I respectfully dissent. The panel majority, in sustaining summary judgment in favor of the government, holds that the Rural Utilities Service of the Department of Agriculture (the “government” or “RUS”) cannot be liable for payment to the sub-contractor for work performed in response to the government’s requests to continue with the project, amid government reassurances and actions “to rebuild Open Range’s credibility and subcontractors’ confidence in the project.” The government provided such reassurance repeatedly, for “RUS intended that the project move forward;” whereupon the subcontractor continued to perform based on these government representations. Maj. Op. at 1343-44.
The government ambitiously planned the construction of an electronic and digital information and communications system to provide broadband service to the vast rural areas of the nation. The project was implemented by “master service agreements” between Open Range and each subcontractor; each master service agreement was reviewed, adjusted, and approved by RUS. Each contract phase required prior authorization and approval by RUS. The work for which G4S here seeks payment had been authorized and approved by RUS.
When G4S and other subcontractors declared their intention to cease work because Open Range was not paying them the approved amounts for work already done, RUS provided reassurance to the subcontractors, issued press releases, deposited additional funds with Open Range, and urged that performance continue. My colleagues state that they “encourage” such governmental intervention. See id. at 1344 (“G4S asks that the government incur liability because it talked to the individuals in charge of a failing project in an attempt to fix the problems. If anything, this sort of governmental response should be encouraged.”). But even as the court recognizes that the government persuaded the subcontractors to continue performance, the court also holds that the government can avoid payment for the performance it solicited and obtained.
*1345 The government moved in the Court of Federal Claims for summary judgment of no liability, and that court granted the motion on the ground that the subcontractors are not “third party beneficiaries” of the prime contract. No other theory was discussed in the court’s decision. The panel majority affirms on the ground that G4S, as a subcontractor, is not a third party beneficiary of the contract between RUS and Open Range. However, third-party-beneficiary theory is not as rigid as my colleagues state, and depends on the actual relationship among those concerned.
The claim before us is for payment for the work G4S did, after receiving the government’s and Open Range’s reassurances of payment. G4S seeks this payment for work done at the urging of the government, work that had previously been authorized by the government in accordance with the subcontract terms approved and in large part drafted by the government.
The complex of these arrangements is not that of simple prime- and sub-contractor obligations. The summary judgment record is not fully developed, but the facts at this stage plausibly support an obligation on the government, in law and/or in equity, to pay for that which it requested and urged. Such an obligation may arise on the facts of particular relationships, not on the generalities of third party beneficiary law. I would remand for determination of the obligations incurred on the specific facts of this case.
The United States, like other parties in contractual relationships, may be liable for benefits solicited and received, for which compensation was promised and expected. As explained in Metcalf Construction Company, Inc. v. United States, “[ejvery contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.” 742 F.3d 984, 990 (Fed.Cir.2014) (citing Restatement (Second) of Contracts § 205 (1981)). This principle applies to contracts with the federal government. E.g., Mobil Oil Exploration & Producing S.E., Inc. v. United States, 530 U.S. 604, 607, 120 S.Ct. 2423, 147 L.Ed.2d 528 (2000) (“When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals.”) (quoting United States v. Winstar Corp., 518 U.S. 839, 895, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996) (plurality opinion) (internal quotation marks omitted)); Precision Pine & Timber, Inc. v. United States, 596 F.3d 817, 828 (Fed.Cir.2010); Malone v. United States, 849 F.2d 1441, 1445-16 (Fed.Cir.1988).
The panel majority holds that the government cannot be held liable for paying for the work done by G4S, reasoning that it is a “sovereign responsibility] to safeguard taxpayer funds.” Maj. Op. at 1344. The sovereign has many responsibilities, including that of paying for work that it requests and receives. See Metcalf Constr. Co., 742 F.3d at 994 (“[A] breach of the implied duty of good faith and fair dealing does not require a violation of an express provision in the contract.”) (emphases in original); Eric A. Freehtel, “The Government Must Administer its Contracts Fairly and Reasonably,” 54 Contract Mgmt. 30 (2014).
In sum, in view of the undisputed premise that authorized work was done by G4S in reliance on the government’s assurances, this case warrants exploration of the equities as well as the law. The Court of Federal Claims did not reach this aspect. I would remand for this purpose.